UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CECILIO BLANCO ROMERO,

      Petitioner,

v.

SECRETARY KRISTI NOEM,
GARRETT J. RIPA,
DEPARTMENT OF HOMELAND
SECURITY (DHS), ATTORNEY
GENERAL PAMELA BONDI,
EOIR, ALLIGATOR ALCATRAZ
WARDEN,

      Respondents.

Case No. 2:26-cv-353-KCD-NPM

## **ORDER**

Petitioner Cecilio Blanco Romero has filed a habeas corpus petition challenging his detention by U.S. Immigration & Customs Enforcement ("ICE"). (Doc. 1.)[1] He claims that his continued imprisonment violates the Fifth Amendment as interpreted by *Zadvydas v. Davis*, 533 U.S. 678 (2001). Respondents oppose the petition. (Doc. 5.) For the reasons below, the petition is **GRANTED**.

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

## I. Background

Romero, a citizen of Cuba, entered the United States in 1980 and was released on parole. (Doc. 5-1 at 2.) Between 1985 and 2010, he was convicted of various crimes, including distributing narcotics, burglary, and shoplifting. (*Id.*) He was first ordered removed on or about May 29, 1996, after which he self-deported to Mexico. (*Id.*) He later returned and was again ordered removed from the United States on March 20, 2014. (*Id.* at 2, 9). Petitioner was not removed and was placed on an order of supervision—a kind of conditional liberty, allowing him to remain at home so long as he followed the conditions of release. (Doc. 1 ¶ 4.)

On July 16, 2025, Immigration and Customs Enforcement ("ICE") revoked that supervision and put him back behind bars. He has remained there ever since. (Doc. 5-1 at 1-2.) In February, Romero filed this emergency petition for a writ of habeas corpus. (Doc. 1.) He argues his removal is not reasonably foreseeable and asks this Court to order his immediate release. (*Id.* at 4-5.)

## II. Legal Framework

The federal habeas statute, 28 U.S.C. § 2241, provides authority to issue writs of habeas corpus when an individual is "[i]n custody in violation of the Constitution or law or treaties of the United States." *Id.* § 2241(c)(3). "At its historical core, the writ of habeas corpus has served as a means of

2

reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). "Section 2241 authorizes federal courts to hear challenges to immigration detention." *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *2 (S.D. Fla. Sept. 9, 2025).

### III. Discussion

The Government first tries to avoid the merits entirely, arguing that two jurisdiction-stripping provisions of the Immigration and Nationality Act—8 U.S.C. §§ 1252(g) and 1252(b)(9)—block this Court from even hearing the case. (Doc. 5 at 3.) We need not spend much time on either.

The Government first claims that § 1252(g) bars review because Romero's plea arises from the "execution" of a removal order. But the Supreme Court has repeatedly cautioned that § 1252(g) is narrowly tailored to three discrete actions, and it does not operate as a blanket ban on habeas review for prolonged detention. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018). Indeed, if the Government's sweeping interpretation were correct, *Zadvydas*—the seminal case where the Supreme Court held it could consider a habeas challenge to unlawful, prolonged immigration detention—would have been stopped in its tracks before ever reaching the merits. The Court is satisfied it has jurisdiction to decide whether Romero's detention is lawful. *Zadvydas*, 533 U.S. at 688 (citing § 1252(g) yet concluding "that § 2241

3

habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention").

The Government similarly argues that 8 U.S.C. § 1252(b)(9) bars judicial review. (Doc. 5 at 5.) Not so. The Eleventh Circuit has held that § 1252(b)(9) "only affects cases that involve[] review of an order of removal." *Canal A Media Holding, LLC v. United States Citizenship & Immigr. Servs.*, 964 F.3d 1250, 1257 (11th Cir. 2020). Romero is not challenging his removal proceedings—he is challenging the antecedent detention. So "the Government's reliance on § 1252(b)(9) is misplaced." *Fernandez-Garcia v. U.S. Att'y Gen.*, No. 1-20-CV-23599-UU, 2021 WL 8821923, at *5 (S.D. Fla. Apr. 15, 2021).

That leaves the merits, which as noted, concern Romero's continued detention pending removal from the United States. (Doc. 1 at 4-5.)

The statutory framework for removal works like this: when a noncitizen's removal order becomes final, the government has 90 days to effectuate removal. 8 U.S.C. § 1231(a)(1)(A). During that period, detention is mandatory. *Id.* § 1231(a)(2)(A). If the 90 days pass and the noncitizen is still here, the statute gives the government a choice: release the individual on supervision or keep them detained. *Id.* § 1231(a)(6).

But as the Supreme Court explained in *Zadvydas*, the authority to detain does not stretch into infinity. To avoid serious constitutional problems,

4

the Court read an implicit limitation into the statute: the government may detain a noncitizen only for a period "reasonably necessary" to secure his removal. 533 U.S. at 659. And to make that rule workable, the Court established a presumption. For the first six months, detention is presumptively reasonable. *Id.* at 701. After that period has passed and the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the burden shifts to the government to provide evidence sufficient to rebut that showing. *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). Thus, "in order to state a claim under *Zadvydas*, the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

Applied here, Romero satisfies the initial temporal requirement. ICE took him into custody over eight months ago. Because the six-month period for presumptively reasonable detention has expired, *Zadvydas*'s burden-shifting framework applies. Romero has carried his initial burden of showing there is no significant likelihood of removal in the reasonably foreseeable future. He does so by pointing to the fact that the Government has had over twenty years to deport him, and yet it has failed, and there are no new facts

or developments to support removal. This is more than enough reason to believe his removal is nowhere in sight.

The burden thus shifts to the Government to rebut Romero's showing, but they fail to do so. *Akinwale*, 287 F.3d at 1052. This outcome should come as no surprise—the Government offers no documents, no diplomatic agreements, and no concrete evidence that Romero will be removed in the near future. (Doc. 5 at 8.) Instead, the Government extends hope and a placeholder. It relays an assertion from ICE that the agency is working towards executing a third-country removal to Mexico. (*Id.* at 8 n.1.) The Government readily admits it has not a single document to support this representation. (*Id.*) That is not how a burden of proof works. A mere representation from an agency to its lawyers—unbacked by a shred of evidence—cannot justify keeping a man locked in a cell. Because the Government offers nothing to suggest removal to Mexico, or anywhere else, is more likely now than it was in 2014, Romero must be released.

It is easy to see why this outcome might cause unease. Romero has been convicted of serious crimes. Yet, because the Government is completely unable to effectuate his removal, he has been allowed to live in this country for nearly two decades without facing the ultimate immigration consequence. But this Court is bound by the law. And the law is clear: the Government cannot lock individuals in a cell indefinitely as a workaround for a stalled

deportation process, nor can it use indefinite detention simply to placate popular opinion. *Zadvydas*, 533 U.S. at 679. The Constitution cannot be ignored just because the facts are frustrating. If there is a flaw in a system that leaves convicted criminals in a state of perpetual immigration limbo, the remedy lies in the halls of Congress or with the Executive branch—not with a federal judge.

### IV. Conclusion

Because the Government cannot show any real prospect of deportation, the Court finds no significant likelihood that Romero will be removed in the reasonably foreseeable future. He is therefore entitled to release from ICE custody under *Zadvydas*. But that release is not a free pass—he remains subject to the strict conditions of his Order of Supervision.

Romero also brings a second claim, arguing that ICE flouted its own regulations—and thereby violated the Administrative Procedure Act and the Due Process Clause—when it revoked his supervised release without an informal interview or an explanation. (Doc. 1 at 5-6.) But we need not wade into those issues today because Romero has already crossed the finish line. The whole point of his petition was to secure his release from ICE custody. Since he is getting exactly what he asked for under *Zadvydas*, any ruling on the agency's revocation procedures would be purely academic. Romero's remaining claims are therefore dismissed as moot.

Accordingly, it is **ORDERED**:

1. The Verified Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED**.

2. Respondents shall **RELEASE** Romero within 24 hours of this Order, and they shall facilitate his transportation from the detention facility by notifying his counsel when and where he can be collected.

3. The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close this case.

**ORDERED** in Fort Myers, Florida on March 25, 2026.

Kyle C. Dudek
United States District Judge

8